All right, thank you. You can be seated. All right, let's hear from the appellant. Yes, sir. May it please the Court, Kwaku Okoa of Sibley Austin, LLP, for the petitioner, Eddie Etienne. Most aliens who are subjected to deportation proceedings appear before an immigration judge. They appeal as of right to the Board of Immigration Appeals and then to a federal court, and they can raise any legal defenses they may have at each stage. But this case arises out of the specialized fast-track removal proceedings that immigration enforcement officials may use to effect a removal on their own without any involvement by an immigration judge or by the BIA. My client was arrested at his home in a dawn raid, handed a two-page check-the-box form stating the government's intent to deport him in short order, and given 10 days to respond from his cell in immigration detention. He did respond, including by checking a box stating that he wished to contest his deportation. But Mr. Etienne has a GED-level education. He did not state in his response that he wished to challenge the agency's erroneous decision to classify his 1996 Maryland conviction as an aggravated felony. We don't know why he checked the box, do we? I mean, we don't understand what he was going to bring before the process when he checked that box, do we? There's nothing in the record to indicate what he was interested in challenging, or even that he understood in any particular form what he needed to do. But he did wish to indicate to the agency, in contradistinction to the portions of the form that allow an alien to just waive any objection and, in fact, waive the 14-day waiting period that allows aliens to bring a petition for review before the court. He didn't check any of those. He said, wait, I want to contest this. Well, where did he bring up the question squarely that the conspiracy conviction was not an aggravated felony, and that he was not removable? Where was that brought up? During the agency proceedings, Your Honor? Yes, before the DHS service officer. It was not brought up before the DHS service officer, Your Honor. Our position here is that he did not need to do so. He didn't need to? He did not need to do so, Your Honor. Because he was unable to raise the question of law? Because what the statute points to is what administrative remedies are available to the alien as of right. And so that embodies basically two separate principles. One is that an administrative remedy is available, and administrative exhaustion of principles require a petitioner to follow the agency's practices and procedures as have been expressly stated. The government concedes here that nothing in the form, nothing in the regulation expressly required Mr. Etienne to raise any legal objection. It pointed him to factual objections to the... So you say you can't raise a question of law? I say that he need not. The government's contention is that he could have, that though the portion of the regulations pointing to the alien's response says nothing about raising a legal objection, that there is residual discretion within the deciding service officer. But that would be, it would be an odd thing for a fast-track procedure to go piecemeal, wouldn't it? Well, it would be an odd thing for a fast-track procedure to require a detailed examination without briefing, without a hearing, and to be brought in the first place within a 10-day period. But for the most part... A fast-track procedure of its very nature is to have some element of efficiency and expedition, and it would seem the best thing to do, the way to achieve that, is to allow the alien to bring forth his entire case. I think it's the opposite, Your Honour. It's what? I think it's the opposite, Your Honour, that the agency proceeding moves very quickly, in part because there's no consideration of legal questions. For example, during the rule-making proceeding back in 1995, and this is contrary to what's in the government's brief today, one of the objections that was raised was that, well, a 10-day period for mainly uncounseled people, many of whom don't speak English, won't offer them an opportunity to raise objections like a due process challenge, and the agency's response was that's what the Court of Appeals is for. Well, I'm not sure that that... The concern I have about your argument, the way you're framing it, is that there is no obligation on the part of the petitioner to put an issue of which he is aware before the appropriate questioning body, and I find that very hard to accept. What I... What I could understand, and wonder if this might not be the better argument, is the form was unclear, and because it is unclear, it would not necessarily have put petitioner on notice of the need to articulate the specific legal issue that he wished to bring. What I found a little concerning about this, actually a lot concerning, is it's absolutely true that the form doesn't make it clear that you can't raise a legal issue, but it's also absolutely true it doesn't make it clear you can't. And what we have here is an individual who indicated that he had a concern, but never followed through to set out what that was for the appropriate authority. So he was on notice that he could object, and he availed himself only... He didn't avail himself of the extent... Necessary to make it clear what that objection was. So surely he has some responsibility to do that, but you don't think so. Let me see if I can unpack this a little bit. I find it very difficult. But I do think that Your Honor pointed to principles of notice, and I do think that's at the heart of what's going on here, that administrative exhaustion principles, and that's, I think, clearly what the statute is pointing to here, where it says in Section 1252 that an alien must first exhaust all remedies available to the alien as of right... The petitioner was represented by counsel throughout these proceedings. He was episodically represented by counsel. So he acquired counsel on March 21st. The record reflects his... Let me back up and say that on March 6th, he was arrested and served with the notice of intent form. On March 21st, he had acquired... By March 21st, he had acquired an attorney who entered a notice of appearance. On that same day, the final administrative removal order was issued by the agency. What about, I mean, just looking at the regs, and perhaps we owe some deference to the departments or the view of its own regulations, but it says that the notice of intent shall constitute the charging document. The notice of intent shall include allegations of fact and conclusions of law. If an alien chooses to rebut the allegations in the notice of intent, and then it goes on, talks about findings there, and then later on in, what is it, D3, or whatever, it says, you know, it says if the deciding service officer finds that the alien is not amenable to removal under Section 238 of the Act, the deciding officer shall terminate the proceedings and refer it over to an immigration judge. But it seems to me, when you take all of these together, that the purpose of the administrative procedure is to determine removability. And I don't understand the common sense of a scheme that says you're disabled from contesting removability in a procedure whose entire purpose is to determine removability. That doesn't... I'm not sure how I can piece that together. I gather the 11th Circuit had this same question before it, did it not, in the Malou decision? It did, Your Honor. There are a few questions now floating. You don't agree with the 11th Circuit? We don't agree with the 11th Circuit. We agree with the 5th Circuit on this, and we also agree with the 10th Circuit, with Judge McConnell's view that, in fact, there are no administrative remedies involved. But let me take a step back for a moment in trying to first address the notice question and then try to come back to why this is commonsensical, if I may. So notice is critical, because that's what the principles of administrative exhaustion point to. When the Supreme Court looked at very similar language in Woodford v. Ngo, language that pointed to the requirement that prisoners exhaust all remedies available to them, without including as-of-right, and I do want to come back to as-of-right, what the Supreme Court said was, we know what administrative exhaustion means, and that's what this is pointing to, and it means pursuing all of those rights that are held out by the agency. So the agency has to make clear, and that's what the administrative law treatises that we point to in our reply point to. It's what cases like McCart v. United States, Parisi v. Davidson, all of them are pointing to express statements by the agency. If you're involved in our proceeding, this is what you must do. And there's actually no dispute, I think, going to how the agency reads the regulations. The government's position here is not that there was any affirmative statement, you may or must raise legal arguments during the response portion of the fast-track proceedings. It's simply that there's residual authority in an officer that can be drawn from the portion of the regulation that speaks to the powers of the officer, and from that, it's possible that the officer, of his or her own volition, might act. None of that points to anything that the agency has held out to Mr. Etienne or anyone in his position. It's not in the notice, it's not in the form, it's not in the regulations. And as well, none of it points to any duty by the officer to respond. Would we be doing a disservice to aliens if we said that they were absolutely... I mean, there's no... As Judge Duncan pointed out, there's no prohibition in here against considering questions of law. I mean, you can look through these regs, and there's not that prohibition, but wouldn't we be doing a disservice to aliens if we said you can't even contest before the service officer whether you're removable as a matter of law? You can't even... You can't even raise the question. I mean, that... That's not our position, Your Honor, that we don't contest the government's view that the deciding service officer does have that power. Our position is... Your question, your argument, simply goes to what the alien knows on the basis of the form. Exactly. Not what can actually be brought. I mean, there's nothing on the form that prohibits the alien from raising legal... Right, exhaustion principles. Your question is just... Your argument is simply that the alien needs to know that. That's right. It goes to fair notice. It goes to square dealing by the agency. And I suppose if you've got this ambiguity, you construe it against the agency that created this notice. It's a fairly easy fix, isn't it? You just make it clear. I think that's right. I think if the agency made it clear and gave people square notice that they expect people to raise these legal arguments, now they would raise questions about how this process would function when the deciding service officer, who's not a lawyer, then receives a legal brief and what exactly that person would do with it. But I think... when someone's represented by counsel. Not at all, Your Honor, because again, the question here, the statutory question, is did he have administrative remedies? Did he exhaust what the agency held out for him? And a lawyer looking to the regulations... In fact, if the lawyer had looked to the preamble to the rule, the lawyer would have found that was promulgated in 1995 and from which today's regulation springs, the lawyer would have found nothing at all about raising legal claims in the response. And in fact, the regulation... Yes, Your Honor? What are the requirements to be a deciding service officer? Do you have to have any legal training? There is no such requirement. As we put it in our brief, the issuing and deciding service officers, the issuing service officer is extremely broad. It can be nearly any employee of the United States government. The powers can be cross-referenced around. The deciding service officer categorization is somewhat narrower. But there's no requirement, as I understand it, now that the government has provided, that the deciding service officer be trained in the law. The government's position is that, well, there are lawyers down the hall. But the point is that all of the power resides in the deciding service officer who's not particularly well positioned to decide these legal questions. And that's why it squares with our position that what's really going on in these fast-track proceedings is that the agency is asking the alien, quickly, give us your response on the factual premises of our determination. Are you a citizen? Are you a lawful permanent resident? And are you a person who committed a crime? If the answer to any of those is no, or if there's dispute as to that, then the deciding service officer can look at the evidence. So if that's your position, you would say that because the service officer is not a lawyer, that that goes far beyond the form. It would seem to indicate that the petitioner could not raise questions of law before a non-lawyer, regardless of what the form said. Well, Your Honor, I was... There was some absolute prohibition. It's an interesting thing because the Supreme Court has allowed non-lawyers to perform tasks that we think of as judicial. There's a case called Shadwick v. City of Tampa where a big brouhaha was made over the fact that magistrates issuing search warrants had to be lawyers. And the Supreme Court said unanimously, no, they don't have to be lawyers. In this case, they have a legal staff advising them. I think that's right, Your Honor. There's no due process requirements on making a legal decision. In fairness, you were just responding to Judge Traxler's question. You seem to have wandered into difficulties by pointing out that the deciding service officer didn't have to be a lawyer, but that wasn't the crux of your argument. I intended it, in part, to be a response to Judge Wilkinson's question about the commonsensical structure of the proceeding, which, again, the agency has put together, and if the agency thinks that there are pieces of it that hamper its ability to address these questions properly, that's for the agency to change and win its power. But again, our position is not that there's a due process problem with having a non-lawyer decide the question. I'm a New Yorker by birth and a member of the New York Bar, and in New York, justices of the peace need not be lawyers, and they can preside over criminal proceedings, and that is consistent with due process as well. Our point is just that what administrative exhaustion principles look to is the structure of the agency and what the agency has told people that they need to do to comply with the proceeding as it's been designed by the agency. And I think if you look through the entire regulatory history of this provision and the way that the government has implemented the power that's been given under 238 to effect these removal proceedings, you'll see no indication that what the government has told people to do or given the right to do, and as of right, again, I've tried to come back to this a few times, is a critical part. As of right points, the legal entitlement to have a particular opportunity. There's no indication that government's pointed to none that if the deciding service officer, in fact, received a long legal brief detailing the reasons why it was an aggravated felony, that the deciding service officer would have to do anything about it. Are you asking us to decide the aggravated felony question or are you asking us to remand it back for the decision to be made? We're asking the court to decide that it's not an aggravated felony. And you think that's how the system is designed to work? Yes, Your Honor. What the statute contemplates is that there will be judicial review coming up from the final removal order. And that's, you know, it is... I didn't say judicial review. Judicial review, yes, on a petition. In your position, the Court of Appeals should be making this aggravated felony decision in the first instance? Well, there is a determination that's been made by the agency that it is an aggravated felony. That's the basis of the charge in the final administrative removal order. As Your Honor notes, it's not at all explained what the basis of it is. All we have is a B plus U. You've answered my question, and you've got some time reserved.  Thank you, Your Honor. Good morning. May it please the court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. Let me... It may be helpful to explain to the court how Mr. Etienne came to the attention of the immigration authorities and how he was placed into the administrative removal proceedings. And I think that'll answer some of the questions that the court has raised regarding whether or not he had sufficient administrative review remedies available to him in order to ventilate his concerns regarding the aggravated felony charge. If you look at the administrative record at page 50... Excuse me. Starting at page 52, this is the decision by the Citizenship and Immigration Services branch of the Department of Homeland Security. It's a decision denying Mr. Etienne's application for temporary protected status. And in that decision, the CIS specifically explained to Mr. Etienne that they believe he is not eligible for temporary protected status because his 1996 conviction was an aggravated felony and also a controlled substance violation. And explained the legal basis that the agency had in determining that he was an aggravated felony and therefore ineligible for temporary protected status. Before issuing the final decision denying temporary protected status, USCIS sent him a notice of intent to deny, which gave him time to rebut the preliminary finding that he was ineligible for temporary protected status, setting forth the legal reasons why the service thought that he was ineligible for temporary legal status. And through his attorney, he was represented by an attorney according to the decision. Through his attorney, he gave a response as to why he was not an aggravated felon. During those proceedings, none of the arguments raised related to this argument regarding conspiracy being overbroad as defined in Maryland. Instead, his attorney raised different arguments challenging the conspiracy aggravated felony charge. Were some of those legal arguments? Yes, they were, Your Honor. So in other words, he wasn't in the dark about raising legal arguments because he did, in fact, raise legal arguments. Through his attorney, he raised the legal arguments in the temporary protected status proceedings. The way I understood this procedure to work was that it seemed to me advantageous to allow the petitioner to raise legal arguments because if the service officer at DHS found one of those legal arguments meritorious, he could refer it over to an IJ, which is vastly more favorable. It works at a slower pace than the fast-track procedure. So I would think it would be advantageous to have the legal argument raised before the service officer so the service officer could refer the petitioner out of fast-track status. And if the petitioner decides that, yes, it is removable, I mean, if the service officer decides, yes, it is removable, that's always a reviewable question at the court of appeals, is it not? Whether it's reviewable. If the service officer decides the petitioner is removable as a matter of law, then that would always be reviewable by the court of appeals. It's subject to challenge. Yes, and the question is it's subject to challenge. So the way the administrative scheme works, as I understand it, is that if the service officer decides in petitioner's favor, the case goes over to an IJ, and if the service officer decides against the petitioner, the case can come up to us for the legal question. But, and I'm afraid of just messing up the way the administrative scheme works here, and in fact we could end up working it, the alien could be in a less advantageous position if petitioner's argument is adopted and there's some prohibition. And I appreciate that, Your Honor. That's correct. I do want to qualify that by saying our position is that the legal issues can be reviewed in the court of appeals in a judicial review. Legal issues, what? The legal issues can be reviewed in the court of appeals on a petition for judicial review. However, the legal issues must be exhausted. The question isn't whether the process precludes the consideration of legal issues. The question is whether or not the process makes it clear to the alien that it will consider. And help me, I think my concern comes down to this. Maybe you could just address it directly. The Supreme Court has said that administrative exhaustion means using all the steps that the agency holds out. Correct? Yes. Here, you have to concede that the form is simply not clear. It doesn't preclude an alien from raising a legal challenge, nor does it make it clear that it allows such. So how there seems to me some tension then between the requirement, the exhaustion requirement that the remedy be held out, and the lack of clarity, the ambiguity in the notice. And that sort of is. But I think in this case. No, no, just please, if you could just address my question. And then do so by way of reference to the facts. But just generally, if you could. I disagree that the form is not clear, that the alien can raise. Where does it say? I'm looking at page one of the record. Okay. I'm going to look at the form. Okay. Yes. That is the form. Okay. Yes. The notice of intent to issue an administrative final order. And it says towards the bottom half of the page, it says your rights and responsibilities. The second paragraph of that says, you must respond to the above charges in writing to the department address provided on the other side of this form within 10 calendar days. If you look above, the charge says specifically you are deportable under this portion of the statute. Where on the form? I wish to contest and or to request holding of removal in their boxes. I contest my deportability because. Right. And it says on there, the very last one says I am attaching documents in support of my rebuttal and request a further review. Where on the form does it make it clear that the, I understand that it doesn't preclude it. All I'm asking you to help me with is what puts Mr. ATN on notice that it includes factual and legal challenges. I agree that the form does not say. And that goes back to my question about Woodford. How does the agency hold out a right? That is not clear. That's all. That's really all I'm asking. And I think, I mean, well, that's my question. Well, maybe there's not a good answer. I think the agency holds out the right for the alien to respond and address the charges that the alien, that the agency plans to bring. It's as clear as it needs to be. I guess that's your answer. Exactly. And in this case, there's no, there's no question that he sought to take advantage of that opportunity. That is correct. He checked the box and he failed to, excuse me. No, go ahead. He failed to perfect what he, what he meant. The fact that two circuits have disagreed as to what it means is evidence that it's unclear. Well, I think, um, it, it may support the, the reading that it's, it's not clear, but I don't think it, it, I don't think it compels the conclusion that the, that the form itself, um, that, that it precludes the alien from, from child, from challenge, from bringing legal challenges to the agency. No, and that's, it doesn't preclude it. Right. But it's unclear. Exactly. But again, in this case, I don't think that whether, whether or not it's unclear in this case, the alien clearly was aware of the fact that he could do this. The question is, I don't know what the clarity of the form here question is, whether the alien was disadvantaged by that in any way, because, uh, he had counsel representing him. That's correct. Number one now, and he also raised legal arguments. That's correct. So how, if he raised legal arguments below other legal arguments, not this one, why is, I mean, why is that, why is that not clear, at least in this case, that the, the lawyer who was, that the petitioner who was represented by counsel actually did, in fact, raise legal arguments. And that's, that's the government's position, Your Honor. That's the point that we're trying to make. When I, when I tried to explain to, when I, when I was going through how he came to the attention of the If it's unclear, you assume it's unclear. The form. The form is unclear. How does the lawyer, in fact, the lawyer raised other legal arguments, then, uh, make him effectively aware that he could have raised this legal argument. But it seems to me that, that the premise that the alien doesn't know he can raise legal arguments, it, it puts a burden on the alien to, to make a distinction between legal and factual arguments. The form, the service simplified the form and said, look, if you want to rebut any of the charges and allegations of fact here, tell us what it is that you, that you disagree with. No holds barred. Legal, factual, it doesn't matter, bring it on. That way we know what it is. But for, for, for petitioner to insist that the aliens have to be able to tell the legal challenge. That seems to me, uh, an owner's burden on the petition to put on the petitioner to be able to tell him to be able to tell apart what is illegal and what is a factual. But all of the boxes in that first, um, section, I can test my deportability because all of those are factual. I am a, I am a citizen or national. I was a lawful permanent residents, resident. I was not convicted of a criminal offense. The answers to all of those are yes. And they're factual questions to those three. Yes. Yes. And then it just says, I am attaching documents in support of my rebuttal and request for, for which, which simply tracks all of those. It's number four of the three specifically factual, true, false check the box. Well, no, excuse me. I'm sorry. No, your honor. I disagree with that because I, because at the top it says I can test my deportability because in parentheses, three boxes factual and then four that says I'm attaching documents in support of the three factual boxes. But before you even get to the four boxes that you check, it says in parentheses, I tell a size in parentheses, attach any supporting documentation, which applies to all four of those check boxes, including the last one. And the last one simply says I'm attaching documents in support of my rebuttal, which I could logically be read as anything to show. I'm a citizen. I'm a lawful permanent resident. I was not convicted of the criminal offense. I don't think, I mean, that's that could, that may be a, I don't understand how it can rationally be read on the wall because they're different check boxes. The other one says I'm attaching documents in support of my rebuttal and request for further review. It doesn't, it doesn't link it to any of the above three choices. Whereas the direction that's italicized in parentheses after the, I can test my deportability because applies to all four. Doesn't our back and forth suggest a problem here? It may, but I think, again, going back to the facts of this case, Mr. Etienne was clearly aware that he, that he had the opportunity and, and, and the ability to make, to advance his legal challenges. What legal arguments did he raise? According to the notice of, according to the TPS denial, his attorney challenged the omission of conspiracy to when they told him what he was convicted of. And also the use of conspiracy to what? Not the use of conspiracy, but the omission of conspiracy to possess with intent. They said he was removable for the conviction of possession with intent to distribute. Whereas the, the actual conviction was conspiracy to possess with intent to distribute cocaine. And the second argument that he raised was that conspiracy couldn't be an aggravated felony because under state law, it was a misdemeanor. Those are the only two legal arguments that his attorney raised. And at all times, again, he was represented by counsel. And again, Mr. Etienne is not an unsophisticated alien. He has been in, he has been through the legal system, through in the criminal justice system, as well as the immigration, civil immigration deportation proceedings. He was aware of, of lawyers and how they could be used to advance arguments in his favor in order to defeat whatever charges being brought against him. And he did, he did do that here. He consulted, he had an attorney in the TPS proceedings, February 26. The notice, the notice of intent to issue a final removal order was issued on March 6th, March 5th, but I think it was served on him on March 6th. So there was barely a week there between the denial of TPS and the initiation of the, of the, of the 238B proceedings. Mr. Etienne was represented by counsel. Even after he retained new counsel, she did not raise any arguments, challenging the, the aggravated felony determination. She simply said that he deserves the opportunity to apply for withholding of removal and convention against torture protection. And he was given that opportunity. He hasn't challenged the agency's denials of those forms of protection and, and relief in this, in this petition for review. And so that's not an issue before the court. Unless the court has any further questions on the exhaustion issue, petitioner urges the court to go ahead and, and resolve the aggravated felony question. Is that your position? We would refer the court remanded to the agency because the board again has matter of Richardson. If the court goes ahead and, and, and addresses it, we believe that deference Chevron deference to matter of Richardson should be applied because the board has controlling precedent on whether the common law definition of conspiracy or the majority rule conspiracy formulation. But wouldn't the board be bound by matter of Richardson? Why, why would we remand it? Because it's not the board, it would be the department of Homeland security to who would be determining in the first instance and whether or not this is an issue that should be referred to the immigration judge. If the board, if the court finds that exhaustion was, was, is, was necessary. We asked that the court remanded to the agency so that those processes can then kick into place so that the prop, the appropriate processes can be, can be followed. What would that be? Well, if it would be that if, if the court determines that exact that exhaustion isn't necessary and you can reach it, we asked that the court remand the legal issue to the agency so that the, the deciding service officer can then determine whether or not that legal issue is sufficiently complex that it requires referral to the immigration judge. Aren't the merits of the aggravated felony, uh, the, the nature of the aggravated of conspiracy is an aggravated felony there before the Supreme court. Now, are they not? Um, I don't believe so, but I may, I may be wrong. I can, I can double check your honor. Oh, you familiar with the, um, Torres v. Lynch? Oh, it's going to be argued on November 3rd. I am. I am willfully, uh, not up to speed on that. Is the, this is a question of whether conspiracy is an aggravated felony is a question of the applicability of Taylor and what the, um, federal statute or majority. And, uh, of the state's control and who statute controls. Um, I thought all that was before the Supreme court. I apologize, your honor. I was not aware of that, but I will double. Are you aware of the Torres case? No, I was not. I will double check. Of course. And, and, and no, that won't be necessary, but I don't know. I would, I mean, in terms of, I think when you came up here that you would be aware of the, um, the cases in this area that the Supreme court has on its docket and that they've granted certiorari on. And I apologize that I am not your honor. Unless the court has any further questions, we asked the petition for review be night. Thank you. Okay. Reply. A few minutes here. I think I'd like to start with just touching on a couple of factual points and then try to come back to our, our notice of argument. And then I'm not your honor. Uh, and my, my friends in the immigration bar sitting behind me also are not aware of the Torres case that it implicates these issues. Uh, but we'll be happy to go back after, after argument and look into that. Um, so the government's raised a brand new argument here that Mr. Etienne should have been aware of his ability to raise legal arguments because he'd done so in a different legal proceeding under a different set of regulations, going to a different potential removal order. Uh, the, as to whether, which arguments were raised there, I think it's worth noting that the briefs are not in the record. The agency is summation of those briefs is. And so it's not clear what those, what actually, what arguments were actually raised. But again, the administrative exhaustion question isn't, isn't a fact specific one. The statute doesn't look to, doesn't ask the court to look to well, what did the alien specifically know? It asks, it embodies basic principles of administrative procedure. As, as the court has noted, it looks to, well, what was affirmatively prescribed? The leading administrative law treatise says a party to an agency proceeding should be able to distinguish between optional and mandatory interagency review procedures simply by reading the applicable provisions of statutes and agency rules. And here as the, as the back and forth with my, between myself and the court and the government, the court leaves, leaves clear that nothing in the, nothing in the forum and nothing in the regulations makes clear, leaves it open to a party to simply read the regulation and say, okay, this is what I must do. And remember administrative exhaustion principles apply across the board. If the government's position is correct. And what parties to an agency proceeding must do is not only read what the agency has told them that they must do, but also look in the gaps and silences and understand what the outer bounds of the, of the deciding official will be. Then we're all in trouble in IRS proceedings. We're all in trouble in proceedings before the EPA, because we'll never know exactly what we must do. And we must then flood the agency with everything. We think that the, that the deciding official conceivably could do. And that's not the way that administrative exhaustion principles have ever been understood. It also wouldn't be advantageous to, to the alien to hold that people like Mr. Etienne who have not detailed their legal arguments in during the 10 day period where they're after they've been provided with a notice form, cannot raise their arguments before the court of appeals. Most of those aliens, most of the people affected by the court's ruling will be uncounseled. Mr. Etienne was episodically counseled. That's true. But again, nothing in the statute looks to whether the alien was counseled or uncounseled and the government's offered no view of how the statute could be construed to differentiate between those who are counseled and uncounseled. What will happen to people like Mr. Etienne, who are the vast majority of the people who approve, who appear in these administrative removal proceedings is that no one will ever look behind what the deciding service officer did. No one in the agency will ever look behind it because he can't go to an immigration judge. No one at the BIA will look, will ever look at it because that issue can't go before the BIA and no, no judge will ever decide it because it will be barred by the government's view of administrative exhaustion. It wouldn't, I wouldn't offer any advantage to the alien and in contrast would disadvantage the government. If contrary to the scheme that it's set up, where people have 10 days to provide factual responses to issues that they know that they should know, am I a citizen? Do I have a green card? Did I commit a crime? And if it's, let me ask you, I'm sorry to interrupt you. Not at all. Why shouldn't we defer to a matter of Richardson? For a couple of reasons, your honor, the matter of Richardson involves and the determination of whether any particular offense is an aggravated felony within the meaning of federal law. It involves questions of state law. It has a, it has an overlap with criminal law in all of those areas. No agency is entitled to deference, but more to the point, no agency is entitled to deference as matters of state of state law or where there's a criminal, where there are criminal applications going back and forth. The ninth circuits case in Garcia Santana arises out of a criminal context here. The here, the proceeding arises out of a civil context. It can't be that they, that the same, the same provision conspiracy has different meanings. Depending on whether Chevron is turned on or off. But even if you could court were to assume that Chevron principles properly apply, they wouldn't, they wouldn't counsel in favor of, of deference. The particular decision, the matter of Richardson matter of Richardson fails to acknowledge in any way that the Supreme court's controlling precedent in Taylor and Duane is Alvarez councils, not in favor of applying the common law rule, but applying contemporary practice. Long before Taylor, the Supreme court made it very clear that it is settled beyond per adventure that the, that absent contrary indications, Congress intended a common law definition of statutory terms to apply. Taylor explained what in, in the facts of based on the facts in Taylor rebut that presumption. Well, so that's, that's actually not how the government understood it until that's how we'll take it. That I understand because I'm reading a quotation from the Supreme court. That's how I understand it. And then the court and, and Duane is Alvarez did the same thing. It looked to theft, which clearly is a pro. No, no, they came in, they didn't deal, they didn't respond. They didn't rebut that presumption as Taylor did. Taylor did. I mean, Taylor said, this is why the, this is why that common law presumption is not entitled to wait in the context of burglary for a number of reasons, for a number of reasons. And then, and, and I think the, but the, I think the biggest reason and why the reason why the court didn't need to get into particular is of what theft theft meant for purposes of Duane is Alvarez focus is different. But the starting point of Taylor was the presumption and why the presumption didn't apply there. Well, I think with the, I think the starting point for all of these analyses is what Congress is up  And what Congress is up to in this space is applying federal consequences, collateral consequences to state offense. That's correct. And the starting point in, in the starting point. And I'm, and this is the Supreme court tells us that the starting point is the presumption that Congress intended the common law definition of a crime to control. But that the common law definition has been rejoined, has been rejected by a majority of states by a super majority in the fact of Taylor, which is what you have to rely on. And for the generic, for the generic offense, it explained why it rejected it. Right. And the, and those explanations, there's been no explanation of why the presumption does not apply here. And the ninth circuit didn't do it. Well, I think it did. I think that it pointed to the context in which the provision is being used, not in the context of rebutting a presumption. I looked pre closely. Well, your honor, I mean, I think the, I think what the, I think the Supreme court in this, in this court's case in Peterson are all clear that when they, when applying the categorical approach and in determining what the gender, the generic federal offenses, where you look to the contemporary law of the states and, you know, and that squares with what the, what the Supreme court or what the, what the government said to the Supreme court in Taylor. And this,  and the government followed along, the Supreme court all along with the government's view. It said where the common law definition of a term has remained the conventional interpretation. That definition is naturally presumed to be the one Congress intended, but, but the common law definition does not ordinarily apply when the present common understanding of the word departs largely from the technical meaning and how they're all common law. And that's precisely what's happened here. That does not go to, I mean, the government's argument, whatever it may have been, doesn't go to the starting, what the Supreme court has told us the starting point in the analysis has to be. But I think the Supreme court has said that the start, the starting point in a categorical approach case where the, where what's issues, the ad issues, the meaning of an aggravated felony, it's per Duenas Alvarez is what is the contemporary definition in most States? There are two parts of the Duenas Alvarez analysis. So under heading three, the Supreme court first says, well, the ninth circuit got it wrong. We agree that every, every jurisdiction and no one has discarded these old distinctions between, between principles, accessories before the fact that my accessories during the crime, but then Duenas Alvarez didn't attempt to defend that. So if you, if the court looks at a section three, a Duenas Alvarez drafted a broad statute that was going to cover the conspiracy laws of a number of States, both those that contained an overt act requirement and those that didn't, it wanted to capture a conspiracy law and all of its variety. That seems to be the clear purpose of the statute. I think the Supreme court's categorical approach cases point in the opposite direction. The, what the Moncrief versus Holder makes this point, what this, what the Congress is up to in the aggravated felony determination is trying to distinguish between the most serious of offenses carrying the most draconian immigration consequences. And so it makes sense that it's actually looking to narrower categorizations of crime. And I think Moncrief points to this does camps points to this Duenas Alvarez points to this. All of these cases are, are adopting the Lopez versus Gonzalez. They're pointing to narrower rather than broader definitions of what cons, what counts as an aggravated felony, what counts as a qualifying offense under ACA, because I understand that what Congress is doing is trying to capture, capture the broad. And so what the Supreme court says was, well,  we want to make sure that when the categorical approach is applied in these statutes, what's being captured in each case under each conviction. And again, conviction, not conduct of the triggering word what's captured in each case is the same conduct. That's necessarily fine. The law in a third of the state applying the common law presumption here would ensure that it applies across the board. And one of the things, the one of the things that the Supreme court was concerned about in Taylor was that disparity. It is one of the facts, factors that the court looked to in proceeding from the presumption in favor of the validity of, of a common law definition to be sure. But of course the, the burglary, the way that the Supreme court has read burglary means that means that exactly because, because in the context of apologies, I mean, this point is pointing to, as pointing to theft and, and desk camps. This is one that excludes California crimes entirely. And so, and so there, it's true that the, the longstanding and natural consequence of the categorical approach as the Supreme court described it in Moncrief is sometimes to precisely to exclude certain forms of crime under certain state laws that differentiate from the majority, from the, from the federal consequences. Okay, thank you. Thank you. I'll ask the clerk to join during court. Then we'll come down and greet council. This honorable court stands adjourned until tomorrow morning. God save United States and this honorable court.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Allyson K. Duncan